Thank you. Good afternoon, Your Honors. My name is Maria Christich-Decker, and I'm representing the appellants, trustees of the Operating Engineers Trust Fund. And Your Honors, on the outset, I'd like to reserve five minutes for the rebuttal. The issue on appeal here is very, very narrow, and it's a labor law issue. The issue is, did the district court err as a matter of law by not deferring to the arbitrator's opinion and award, which held that the inspection and testing of anchor bolts is bargaining unit work under the collective bargaining agreement. We believe the district court did err. This country's national labor policy... When did the district court decide not to apply collateral estoppel effect? There was a lot of discussion in the briefs about the findings of fact and conclusions of law, but it looks to me like it actually happened on summary judgment. Is that correct? It did initially, because we raised it throughout the lawsuit, and there was a decision on summary judgment. And then we later raised it again in our post-trial briefs. And was there any discussion after your post-trial briefs of collateral estoppel? It looked to me like the district court considered, in the findings of fact and conclusions of law after trial, potentially considering what the arbitrator said as a matter of interpretation or something other than collateral estoppel, but that the collateral estoppel decision that you're now appealing had already been made and wasn't reconsidered. Is that a correct understanding of what happened, or do you have a different view of what happened? We have a different view of what happened. What the court did was it decided not to defer to the labor arbitrator's decision. And that, we believe, was the error. The court should not have allowed the Smith Emory Company to re-litigate the same issues that were decided. We believe that the court erred with respect to not taking a look at what the arbitrator actually decided. But you're saying defer now, but I thought your argument was it deserved estoppel. It had been litigated, and it can't be litigated again under collateral estoppel. Yes, that is our argument. But the issue, again, is that in labor arbitrations, the district court erred by actually not deferring to the decision. Are you using, just to maybe we can get some clarification of terminology here, it sounds to me like you might be using the terms interchangeably. Collateral estoppel and deferring to the arbitrator's decision. Are you referring to those two terms interchangeably? When you argue that the district court erred by not deferring to the arbitrator, are you saying that the district court was bound by what the arbitrator held? Yes, we are. That's collateral estoppel. Well, it is collateral estoppel. But what we're trying to explain is that collateral estoppel is different in the context of labor arbitration. And I think that was what was disregarded by the district court. The district court took a look at what the arbitrator had decided and thought, oh, this isn't detailed enough. I thought that the underlying issue, this is a longstanding dispute. Is it not about whether certain work is covered under the collective bargaining agreement? With this particular work, yes. Yeah, this particular work being what? It's the anchor bolt testing and inspection. Anchor bolt testing and inspection. And wasn't there a question when the issue of collateral estoppel with respect to the arbitration arose? Wasn't there a question as to what issue had actually been arbitrated? Well, there was. Or what was decided within that arbitration. But we disagree with what the court did there because I think they misconstrued and said, oh, the licensing issue wasn't decided. And they focused on that. Which wasn't the issue you had been arguing, right? You were arguing about both. And then the district court said something about licensing in response. Yeah, and what we were trying to argue... Was that on the original summary judgment? Well, on summary judgment. And we tried to raise it every instance that we could. Because, again, our point is that an arbitrator in 2006, an arbitration between Smith Emory Company and the union had decided that anchor bolt testing is covered work. And it's clear. It's clear. Anchor bolt testing is covered work. But what the district court did, which was incorrect, was it took a look. And instead of just taking a look and saying, okay, is this issue that the arbitrator decided the same issue that is before me? And if the decision is yes, it's exactly the same issue. The district court should have then given deference to that decision. But what the district court did, what was inappropriate, was it took a look and thought that, oh, the opinion in a ward did not explain the difference between pre- and post-insult anchors and wanted further explanation. But with the national labor policy in the Steelworkers Trilogy, deference should have been given there. Arbitrators are not judges. Arbitrators are not required to explain their decision. They're there to basically answer a question. They're there because that's what the parties bargained for. Well, in your view, there's a distinction here. This is a very confusing case to me. Oh, okay. There seems to be a distinction being drawn here between the pre-installation inspection work and the post-installation inspection work. Well, that's what the respondents are arguing. We're saying that there's no distinction. Well, but the district court fought that, didn't it? Yeah, that was inappropriate. Again, with the deference that should be given to labor arbitration decisions, is the arbitrator... The arbitration award is clear. Anchor bolt testing is covered work. Both types. The whole thing, right? The whole thing is covered work. It's covered work. But what the district court allowed the respondents at Smith Emory Company to do was say, oh, no, you know, there's a subset here of these type of anchor bolts that, you know, this is what's not covered. Arbitration only covers a certain set of... Well, when you went into the arbitration, was the company taking the position that none of this is covered work? No. Actually, see, this is the key. And this is what the court were asking your honors to take a look at. In order to determine that the issues were the same, that were decided in the 2006 arbitration and what was before the district court, take a look at the transcript from the arbitration. The parties specifically lay out the issues there. And the president of Smith Emory Company also specifically defines what anchor bolt testing and inspection is at issue. And it was with reference to the post-installed anchors. These are anchors that are drilled into concrete after the concrete is poured. The parties never, I'm talking about Local 12 and Smith Emory Company, and this was in the record, never disagreed or disputed the issue of the pre-installed, you know, anchors. There was never a dispute. So how can you now argue that, oh, well, that's what was at dispute, and that's what was decided? It wasn't. It's clear, again, from you take a look at the arbitration proceedings, and it's the same issue that was decided. So, again, our position is at that point, it is not the role of the court to fill in the blanks or even to basically second-guess the arbitrator's decision. Well, what should the district court look to when the parties dispute whether or not an issue was decided in the arbitration? Again, what the district court should have done was taking a look at the arbitrator's opinion award, exactly what was decided, and the issue that was before it by taking a look at it. The party to ask the arbitrator to assign? Well, what Smith Emory Company and the parties, and taking a look at, again, the transcripts of the proceedings which defined what anchor bolt testing was at issue. Well, the district court did that, I thought, looked at the transcripts, and said, well, these witnesses all drew a distinction. No, I don't think the district court did that. I think what the district court did was thought that the opinion award was not detailed enough or didn't make these certain distinctions. It was at the trial in the district court where people made the distinction, right? Yes, it was. There was no distinction with the arbitration. Again, as judges, and we all have this as judges, or I'm not a judge, but as you do, and in your opinions, they're detailed and you provide reasoning and analysis, and you look for that when you're reviewing possibly an arbitration award. Well, wait a minute. Maybe to, again, the judge, it didn't quite make sense. But you have to remember, that's the law of the shop. There's a distinction here when you have an arbitration. The arbitrator there is looking at the industrial practices, the bargaining history between the parties, and the law of the shop. They understand what the work is and all that. And the judge going in there doesn't have that background. So that's why we have to give the deference to the labor arbitrators, because this is what the parties had bargained for with respect to an answer to their question. And they got that answer to the question. And for both testimonies, it covered work. You did draw the distinction. The one point I want to make, you have to remember, the arbitrator specifically stated that they found that the violation was intentional, and totally disregarded the fact that, oh, it's irrelevant that Smith & Murray Company doesn't have the license to perform this type of work. It totally disregarded that. And that's the only type of work that the Smith & Murray Company or the laboratories was performing, with respect to this anchor ball testing. So it's clear that it was the same type of work. And even if you take a look at the deposition, the testimony of Mr. Partridge, he clearly says, when he was asked, did Smith & Murray ever perform this work? Oh, yes, yes, they did. Well, when did they not perform the work? Oh, when we started getting all these grievances. They stopped performing the work, and they set up the sister company, Smith & Murray Laboratories, and diverted the work to them. Specifically, that's why they found it was intentional. And that was non-union. That was, yes, Smith & Murray Labs is non-union. Non-union work. Would you like to save the remainder of your time for rebuttal? Well, the other thing, what I wanted to just comment on, is that Smith & Murray Company also, we addressed this, I believe, in the brief, comes on the fact that it's an unconfirmed arbitration award, and we believe that that's irrelevant with respect to... Whether it's actually decided. Whether it's actually decided, or whether it should be enforced. Smith & Murray Company did not make any efforts to vacate the award. And again, in California, we cited the statute that clearly states that the award then becomes binding, and becomes part of the contract of the parties. So, at this point, if there are no other questions, I would like to reserve the remainder of my time. Thank you. Good afternoon, James Harris for Smith & Murray Company. Let me begin by explaining, in response to your question, when the issue of collateral estoppel came up, and when it was adjudicated. It came up at summary judgment. In connection with the summary judgment papers, they argued that there were a couple of issues that they were entitled to collateral estoppel on, and I'll walk you through those issues in a moment. In connection with trial, they didn't raise collateral estoppel in their pre-trial memos at points... It was law of the case at that point, wasn't it? Yes, it was law of the case. They didn't need to raise it. It wasn't in the pre-trial order. It wasn't in their memos. Right. It was all done at summary judgment, right? Right. And then, in their post-trial brief, they made an argument that was really a sufficiency of the evidence argument, which the judge rejected, based on the difference, not between pre- and post-installs, but the difference between testing, which is not done by inspectors, and inspecting, which is done by inspectors. And it's the difference between testing and inspection... But at that point, we're talking about evaluating the evidence that it happened at trial, and now the judge is looking at the contract de novo, essentially, because she had already decided not to apply collateral estoppel. So, for purposes of their appeal, saying, she should have applied collateral estoppel, at least, correct me if I'm wrong, but it seems to me like we need to go back to summary judgment, figure out what the evidence was at summary judgment, and figure out whether she made the right decision at summary judgment. And the rest of it seems irrelevant, even though there's lots of stuff in the brief about it. Well, no, that's absolutely... I agree with that. Well, wait a minute. Wait a minute. Okay. So, at the summary judgment, the trustees moved for summary judgment? Both parties moved for summary judgment. Oh, so there were cross motions for summary judgment. Yes. And your client argued that the only work that's covered is work... Is licensed work by inspectors. Licensed work that requires a license. Yes. And the trustees argued that that was barred by collateral estoppel because the arbitrator had ruled... Correct. Wait, I'm not sure that's correct. Didn't they move for summary judgment saying that it's bolt testing that had already been decided? No. No, no, no. If you look at docket 103, page 12 of 19... Can you tell us the excerpt of record page number? This wasn't put in the excerpt. I'm sorry. It's docket 103. This is their response to our summary judgment motion. And it's page 12 of 29. And they outlined the three issues as to which they see collateral estoppel. Two of which are particularly pertinent here. The first issue is exactly what Judge Schroeder said, that we should be stopped from arguing that the only bargaining unit work is work that requires a license by an inspector. It is true the district court declined to give collateral estoppel effect to that, concluding that issue had not been necessarily resolved. That was a correct decision, but there's an easier way to resolve this issue on appeal. The district court then went ahead and construed the contract. Right. Independently. Independently. And independently concluded that the construction of the contract as to which they wanted us to be estopped was in fact the correct construction. But that's not collateral estoppel. Regardless of whether the arbitrator made a correct ruling or an incorrect ruling, the question is whether the arbitrator decided the question. I understand that. But to be clear, they're saying that we should be estopped from arguing the licensing point. That's one of the things. But they argued in their summary judgment motion that both inspection should be covered work and that that was already decided and that they were entitled to that. Let me come to that one last. Well, I'd like you to come to it now, please. Okay. What is your response to the idea that they moved for summary judgment on bolt testing having already been decided and they deserve collateral estoppel effect? How do you explain that not being decided when at ER 267 the arbitrator says bolt testing is covered work and then the district court seems not to even directly address that? Well, two things. The simpler answer is the district court went on in its decision to conclude that various types of bolt testing work were in fact covered work. Later, after trial? No, no, no. In the summary judgment order. Okay, where? In the summary judgment order. Let me get you a site. Okay. In the summary judgment order, the arbitrator first agreed that appendix B is part of the agreement and that bolt testing and water controlled inspection are therefore covered. And also concluded that high-strain structural steel is covered. And those rulings prevailed throughout the remainder of the case. But why doesn't that cause you to lose on collateral estoppel? Well, it doesn't because if you look at what the arbitrator actually did, the important word in what I said was inspection. You know, I apologize. I kind of interrupted. You were in the middle of answering a question from Judge Friedland. And I've lost track of what your question was. You were talking about how, hopefully we'll get to mine, but you were talking about how actually Judge Snyder's summary judgment ruling went into more detail on that point and drew some distinctions. Yes. I want to see where that is because I didn't see that either. Let me get the ruling. On page 87 of the excerpt, she concluded, sprayed-on fireproofing inspection is covered work, high-strength bolt testing is covered work. Right. That's pre-installed. That's not the kind of work they're talking about now, which is drilling bolts in concrete afterwards. But this is the part where she's talking about the merits, not where she's talking about collateral estoppel. She didn't discuss that. Right. She's looking at the evidence that was submitted to her to make a decision about which types of bolt testing and installation are covered. But the problem is that their appeal is about the sentence from her ruling that you read earlier, which is she recited the arbitrator's ruling, which was that bolt testing is covered. No, but that's not the ruling. That is not what the arbitrator ruled. The award itself says, and I'm quoting, and this is an excerpt of Record 267, the arbitrator finds that bolt testing inspection work and water control inspection work are bargaining unit work and the grievances should be sustained. Throughout their brief, the trustees misrepresent what that statement is. They keep describing that statement, not in quotes, and they put the word and in between testing inspection and work. Excuse me, in between bolt testing and inspection. They put an and in between bolt testing and inspection. And that fundamentally changes the nature of what the arbitrator decided. As the arbitrator wrote it, and this is a simple sentence, bolt testing modifies inspection. It is one thing. It's bolt testing inspection work. It's what the inspectors actually do. They watch the testing. Had the arbitrator wanted to, the arbitrator could have said bolt testing is covered and inspection is covered. That's how they read it, but that's not what the arbitrator said. So that's why they're not entitled to collateral establishment. But I'm looking at your arbitration brief now, your post-arbitration brief. Yes. So maybe your answer is going to be similar to what you just said. I hope. You know, on page 12 of your post-arbitration brief, you say bolt testing involves the testing of certain bolts that are installed after concrete is poured. Another term for them is drilled-in concrete anchors. A hole is drilled in the concrete by construction personnel and the bolt is inserted. In turn, the bolt be proof tested by a licensed lab to make sure the load that the structural engineer called out can be effectively carried by the bolt so that a load is applied that would cause the bolt to rip loose. Any reference to bolt testing work is only found in Exhibit B, where the union claims is part and parcel of the party's last two CBAs. And, of course, your argument in the arbitration was that Appendix B was not part of the CBA. The arbitrator said Appendix B is part of the CBA and Appendix B covers bolt testing work. And what else was at issue other than what you put in your brief? Well, let me explain. First of all, what you just read talking about bolt testing is with respect to high-structured steel, which is not the kind of concrete testing that we're talking about. Wait a minute. You're talking about the testing of bolts after concrete is poured, which is post-installed. But what's in Appendix B? If you look in Appendix B, there are several different categories of inspectors' duties outlined. What you're going to say is that Appendix B does not really describe post-installed testing. And you might be right about that. The arbitrator might have been wrong that Appendix B included post-installed testing, but the arbitrator ruled that Appendix B included post-installed testing, and it doesn't matter for purposes of collateral estoppel whether the arbitrator was right or wrong. No, the arbitrator concluded that Appendix B was attached to the contract. And covered bolt testing. And part of the contract. Let me back up. Again, and part of the contract, and we don't dispute that. And covered bolt testing. The only reference that he made, the only reference in this brief to where it's covered in Appendix B is not to the kind of concrete bolt testing we're talking about. In what brief? In the arbitration brief. The arbitration brief. Your arbitration brief. Yeah, our arbitration brief, when it talks about bolt testing being referenced in Appendix B, is not talking about concrete post-installed bolts. And why did it talk about after pouring concrete? Page 12. I know that, but what it was saying there, it described that kind of testing, but then it said the only bolt testing that was encompassed that's mentioned in Appendix B is high-structure steel. Wait, sorry, where does it say that? Where does your brief say that? Any reference, excuse me. It's not as clear as it might have been. Any reference to bolt testing is only found in Appendix B, which is. . . And the arbitrator read Appendix B and said it covered bolt testing. No. Let me explain what we put in issue in the arbitration. Because this really matters for collateral estoppel. Yeah. Why don't you be a little bit more historic? That's what I. . . Long ago and far away. . . I would like to do that. Be a little historic as to what the nature of this dispute is. Yes. For collateral estoppel, they have to prove, for offensive non-mutual collateral estoppel, that the identical issue was actually and necessarily litigated. Okay? So tell us. . . We raised three issues in our arbitration brief. We argued the licensing point, which. . . Which you won on, but that seems to be a different point. We ended up winning a summary. . . Well. . . Well, eventually you won it on summary. We lost. . . Sorry. What was the dispute that arose that. . . Okay. So the dispute was. . . Well, the dispute is not in the record. The grievance is not in the record, and that's their problem, not ours, because it's their burden to them. What did you disagree about? What we disagreed about was whether bargaining work turned on whether there was a license, and we disagreed about whether Appendix B was part of the contract. Those were the only issues that we raised in our arbitration brief. Those were the only issues that were. . . And they got to the point of what, of whether what work is covered. It was more abstract than that. Appendix B, if Appendix B is not in, if it's not part of the contract, then the grievances get denied. But then the arbitrator said Appendix B is part of the contract, and so the grievances succeeded. Succeeded, right. So Appendix B is part of the contract. We also made an argument based on licensing. We said that licensing was the sort of sine qua non of bargaining unit work, and the arbitrator disagreed with us on that, apparently, and those are the only issues that were actually litigated in the arbitration. No, what was litigated in the arbitration was you said, look, they can't win on the bolt inspection issue, and the reason they can't win on the bolt inspection issue, and by the way, the only kind of bolt inspection we're talking about is post-installed bolts. The reason they can't win on that issue is because you have to have a license to do that work, and our people in Smith Emery do not have a license to do that work, and the people in this other company have a license to do that work, and therefore they simply cannot win. The arbitrator rejected that argument and said you cannot hide behind the argument that your people don't have a license and therefore they can't do the work. The real question is whether bolt testing is covered by Appendix B, and I conclude that bolt testing is covered by Appendix B, and you think the arbitrator is wrong about that, and actually I think the arbitrator may be wrong about that too, but the arbitrator ruled it. Here's where I disagree with you, and it turns on the distinction between race judicata and collateral estoppel. Under collateral estoppel, the only issues that are eligible for collateral estoppel effect are issues that were actually litigated. The only issues that we put into play were the Appendix B and the licensing issue. We did not argue. But that necessarily encompassed the post. It's not the point that you make, it's the issue that gets decided. No, it's what's actually litigated and what is actually found, and what was actually found was that Appendix B is part of the contract and inspection work. If the arbitrator had wanted to say that testing was part of the covered work, the arbitrator could have said so. He said bolt testing inspection work is bargaining unit work. Yes, bolt testing modifies inspection. There was evidence in the arbitration record that certain people do testing, certain people do inspections, and that was explored in great detail at the trial, and Judge Snyder said the great weight of the evidence supports that distinction. If the arbitrator had wanted to rule that... Where in anyone's submission to the arbitrator did that distinction get raised, that bolt testing is different from bolt testing inspection? Where is that? It's in pages 255 and 256 of the excerpts of record. It's in Mr. Partridge's testimony. Hold on. Let's find it. What line? It's several pages there where he talks about how Smith Emory Labs has the license, how they do the testing. It says if Smith Emory's employees performed anchor bolt testing, would that be in violation of California law? Is there misdemeanor to the code because of this license issue, which I think the arbitrator disagreed with you about. The arbitrator said licensing doesn't matter. And then who performed anchor bolt testing. Where is the distinction between inspection and testing? I don't see it on the pages you just named. I just read them. Still talking about testing. It's talking about testing. You're going to lose this case if you can't find it, so let's give you some time. On page 256 it says the labs does the testing. Is that 256 of the excerpts? Yes. Do you have the pagination? I have the full arbitration transcript in front of me. 138. It's implicit in the testimony. Here's one of the problems with labor arbitrations. The arbitrator understood and the parties all understood there was a difference between testing and inspection. This was simply a description of what testing is and that nobody at Smith Emory Company is licensed to do it and therefore it can't be bargained in at work. But my point is when you get to Judge Snyder's ruling at trial, she accepted their construct that licensing doesn't matter and that what matters is... So did the arbitrator. Yes. Judge Snyder said what matters is whether particular tasks have historically been done by bargaining unit members. How is that relevant to the collateral estoppel issue? It's totally relevant because that was not the issue that was in front of the arbitrator. We did not argue at the arbitration that the work done here, that testing work, anchor bolt testing work, we did not argue that that was work that was not traditionally done by bargaining unit members. That was not the issue we raised. It never had been in dispute. It doesn't matter whether it was in dispute or not. What matters is for purposes of collateral estoppel, was that question actually litigated? And it wasn't actually litigated in the arbitration. The only issues it litigated in the arbitration were the licensing issue and the Appendix B issue. And that is not the... Judge Snyder took both those issues as given and said the real issue under the contract is whether this work was historically done as a matter of custom and usage by bargaining unit members. And that issue was not litigated in the arbitration. That is the most important point here. The issue has to be identical. What I was starting to say in response to your question before is the difference between you and me as to how I'm analyzing this is the points you're making would make sense... I'm not saying they don't make sense... would be powerful with respect to race judicata. With respect to race judicata, we could be precluded from not raising, in this case, issues that we might have raised in the arbitration. But this is not a race judicata case because it's different parties. It's non-offensive mutual... non-mutual offensive collateral estoppel. Is it really, though? I understand the difference between race judicata and collateral estoppel, but another thing that you said in your summary judgment brief before Judge Snyder is that you agreed that you were bound by the arbitrator's ruling. And to me, this goes to the question of whether it's abusive discretion or de novo review. To me, when you're reviewing a district court's decision whether to apply offensive non-mutual collateral estoppel, the reason it's abusive discretion is because there are fairness considerations that the district judge takes into account. But there were no fairness considerations at play in this case because you already conceded that you were bound by the arbitrator's ruling. The only thing that was left was whether the arbitrator actually litigated it, which is the same consideration regardless of whether it's offensive non-mutual collateral estoppel or regular collateral estoppel. I agree with part of what you said. It's the prerequisites for collateral estoppel and their review de novo. But when we said we were bound by the arbitrator's award, read that in context. We were talking about the licensing issue and... You were bound by the arbitrator's award as you interpreted it. As we understood it. And as is properly read. It's only properly read to include inspection work. But that means you're conceding that there's no problem about them being a different party. There's no problem with anything other than just figuring out what was actually decided. Is that right? No, it means we're not contesting it. All it means is we're not contesting it. You actually said we agree that we're bound by the arbitrator's ruling. Usually with offensive non-mutual collateral estoppel, the defendant against whom estoppel is being asserted says it's not fair to assert this against me because I didn't understand what the stakes were when I litigated this last time and the plaintiff wasn't there. And that is why district courts, I think, are given discretion and why the appellate court reviews the district court's decision for abusive discretion in that context because there are fairness issues. But here, by saying we are bound by the ruling, you've basically said there are no fairness issues. The only issue remaining is what did the arbitrator rule. In fairness, I think that's a crabbed reading of what we said. What fairness issue have you raised? Well, the reason why we didn't raise a fairness issue is twofold. First, we didn't understand that the arbitration award should have applied to post-installed... To us, at this level, we are now figuring out whether collateral estoppel should have applied. What have you said in your brief that goes to fairness? In our brief here? Well, the issue... The judge... Let me make one preparatory point. Because this issue wasn't raised at trial and the judge had already rejected collateral estoppel, there was no trial with respect to collateral estoppel and we didn't put on evidence then that... But they come here to us and they say collateral estoppel should have applied. You have all the opportunity you have to say why collateral estoppel should not apply. The only thing you said is this issue is not decided. You didn't say they're not the same plaintiffs, this would be unfair. You didn't say we didn't know that the issue here was how much work we needed to pay for. You didn't say any of that. You just said the issue was not decided. So that seems like the only thing we've got before us. We've got to figure out whether it was decided or not. I think what the judge said at trial goes to fairness. The judge said because the record was so sketchy in front of the arbitrator... You look at what was said about both testing and inspection. It's about three pages. That goes to whether it was decided, though, right? No, it goes to what was at issue. I mean, the stakes were not... Okay, I think we have your argument. We'll give you your remaining time for rebuttal. Thank you, counsel. Thank you. Thank you, Your Honor. Again, I believe that the key issue here is taking a look at the arbitration, the arbitration award and the transcript. The arbitration award clearly sets forth the issues before the arbitrator, and one of them was, is the anchor poll testing and inspection covered work? The arbitrator clearly stated it was. So now he's saying there's a difference between testing and inspection. What is your response to that? Our response is if you take a look at the collective bargaining agreement, it covers both testing and inspection. And you read the arbitrator as including both. Absolutely, absolutely. And if I could draw your attention to page 253 of the record. And this is from the arbitration. It's the testimony of Mr. Partridge, who is the president of Smith Memory Company. And do you have the page number of the actual arbitration pages? 135. Thank you. 135. And if you take a look at starting at line 16, it says, could you please briefly, and I emphasize briefly, describe what anchor bolt testing is for the arbitrator so that he might have a better understanding? Answer. These are almost exclusively all bolts that are installed after concrete is poured. And another term for them is drilled in anchors. A hole is drilled in the concrete and the bolt is inserted. And then it is required that the bolt be proof tested to make sure that the load that the structural engineer wants can be effectively carried by the bolt. So what we do is apply a load to the bolt and we pull on it. It is that simple. And the work that the trustees claimed, and again, in reliance on the arbitrator's decision that bolt testing inspection is covered, is the pull testing, the torque, and the proof load, which is what he just described. It's when you put the load on the bolt to see what sort of... So that description you just read, is that testing and inspection or only one of those? Well, it kind of goes hand in hand because you have to have someone that's actually doing the testing on the equipment, the calibration and pulling, someone that's inspecting the drilling of the hole and watching. So it's all... The entire process is covered. And post... Pre and post. Well, pre and post is covered by the collective bargain agreement. The arbitrator didn't make a distinction and that's crucial here. And again, what the court did and what Smith Emery Company is doing now is trying to find ambiguity in a very clear decision that bolt testing inspection is covered. Again, the collective bargain agreement provides that any of these grievances are resolved by arbitration. This is what the parties bargained for. They bargained for the decision from the arbitrator. The collective bargaining agreement cannot take every situation into account. It's not going to explicitly state every type of work that's covered. And that's why the arbitrator who understands the industrial practices, the bargaining history between the parties and the law of the shop. That is what's crucial here, the law of the shop. And he is the one that the parties are asking to fill in those gaps. And that's what the arbitrator did. And it's clear. If you compare the two, they're the same issues. And so the district court went wrong, if you could put it in two sentences. In two sentences, when she delved deeper into the arbitrator's decision and wanted further explanation. The arbitrator is not required to provide explicit findings of fact. And with the district court, obviously she disagreed, the judge disagreed with the arbitrator's ruling. And that's not for the court to actually, even if the factual findings may be incorrect, it's not for the court to make that ruling and to overturn it. And again, at that point, they do. As long as the same issues were decided. We're not talking about roofing inspection or window washing. We're talking about anchor bolt testing. If you take a look at this, it's clear both of those issues were decided. Then the court is required to defer to that and then to apply the collateral estoppel. And the other thing I wanted to just comment on, that counsel kept mentioning this non-mutual collateral estoppel. We believe that the park lane hosiery, which they cited, has no application in the labor context. And it cannot be used basically to give the court any discretion in reviewing an arbitration award. Because if you do, then it's contrary to the Steelworkers Trilogy line of cases, which requires the deference. And it is mutual. The trust funds, you have to remember, were third party beneficiaries to the collective bargaining agreement. We were not able, pursuant to the collective bargaining agreement, we could not be a party of that arbitration. But we recognize that we are bound to any determination. Is there a case that tells us what you're talking about now, that we should consider the trust and the union to be the same entity, essentially that they're in privity or that they somehow are the same entity for purposes of estoppel? Well, I believe the case that we cited is an Eighth Circuit case. So I know it's not binding. And we also have the, let me actually backtrack a little. We have the California statute that we cited that makes any arbitration decision part of the collective bargaining agreement, the agreement between the parties. So if it's part of the agreement, we're bound by that. But that doesn't tell us that for purposes of estoppel analysis we should consider the trust and the union to be the same party, so that it's mutual instead of non-mutual. Okay, I think if you take a look at the American Federation of Television and Radio Artists Health and Retirement Fund, it is an Eighth Circuit case, but there they did apply the collateral estoppel in a trust fund case. And they did find that the, along similar reasoning, that the trustees were not able to participate in the arbitration. But I don't think that case... Does it make a difference? Sorry? I'm sorry, does it make a difference? Whether they're considered in privity or the same? I suppose for fairness type of issues in that analysis, if you were going to undertake that analysis, again, we say that the Park Lane Posery is just not applicable. It should not be applied in the labor context. But here, Smith Emory Company knew the implication of the arbitration decision. They put on their best case. I mean, they argued the same issues before the district court. Again, re-arguing it, and then that didn't work. And so they decided to change it. Oh, well, there's a distinction here. Let's talk about a subset of anchor bolts. There's no subset of anchor bolts. Anchor bolts are covered work. Okay, I think I'll reserve any time. Thank you. Well, I think we're done. The case is submitted. Thank you again to UCLA for having us here today. It was great to visit. And we're adjourned for the day.
judges: Schroeder, Friedland, Chhabria